# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: HENRY GRAUSZ, M.D.,
                                        *Debtor.*

HENRY GRAUSZ, M.D.,
                    *Plaintiff-Appellant,*

v.

JOHN F. SAMPSON, as Liquidator of
GF Commercial Mortgage, LP,
                    *Defendant-Appellee.*

No. 02-1499

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-01-1173-PJM, AP-00-1099)

Argued: April 1, 2003

Decided: April 21, 2003

Before NIEMEYER, MOTZ, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William Francis Sheehan, SHEA & GARDNER, Washington, D.C., for Appellant. Dennis Douglas Davis, GOLDBERG, STINNETT, MEYERS & DAVIS, P.C., San Francisco, California,

for Appellee. **ON BRIEF:** Matthew M. Hoffman, SHEA & GARD-NER, Washington, D.C., for Appellant.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

In this bankruptcy action, Dr. Henry Grausz appeals a decision of the bankruptcy court finding him in breach of a settlement agreement and denying him a discharge in a Chapter 11 proceeding. The district court affirmed, and Dr. Grausz appeals. Finding no reversible error, we affirm.

I.

We derive the following summary of the procedural history and underlying facts from our opinion in a related case, *Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003).[1]

On December 29, 1997, Dr. Grausz filed a Chapter 11 bankruptcy petition in the District of Maryland. One of Dr. Grausz's major creditors was John F. Sampson, who was acting in his capacity as liquidator of GFI Commercial Mortgage, L.P. In October 1997, shortly before Dr. Grausz filed for bankruptcy, Sampson's predecessors had obtained a judgment for approximately $6.5 million against Dr. Grausz in California state court. Dr. Grausz appealed the California judgment, and based on the judgment, Sampson filed a proof of claim in Dr. Grausz's bankruptcy case.

---

[1]In the related action, we affirmed the district court's award of summary judgment to Dr. Grausz's former bankruptcy attorney, Bradford F. Englander, on Dr. Grausz's claim of professional malpractice. *See Grausz*, 321 F.3d at 469.

These events prompted settlement communications between Dr. Grausz and Sampson. Dr. Grausz, with the assistance of his attorney, Bradford F. Englander, negotiated and entered into a settlement agreement with Sampson that was approved by the bankruptcy court on June 8, 1998. Several provisions of the settlement agreement are pertinent here. First, Dr. Grausz agreed to withdraw his appeal from the California judgment. In return, Sampson agreed to accept an allowed, unsecured, non-priority claim of $4 million in Dr. Grausz's bankruptcy case. Second, Dr. Grausz agreed to file amended schedules of assets and liabilities. He warranted that the amended schedules would "to the best of [his] knowledge, contain a complete, true and correct listing of all of [his] existing assets as of December 29, 1997." Third, Dr. Grausz agreed that if he should breach this warranty, Sampson would be free to object to the discharge of Dr. Grausz's debts. Fourth, Dr. Grausz agreed that any breach by him of the warranty would be deemed a post-petition breach, making him liable for a claim for damages by Sampson that would survive any resolution of the bankruptcy case.

Englander prepared the amended schedules in consultation with Dr. Grausz, and Dr. Grausz filed them on June 22, 1998. The amended Schedule B (listing personal property) identified Dr. Grausz's household goods and furnishings as "goods held in storage" and itemized in a "packing list" attached as an exhibit. According to Dr. Grausz, the packing list — which was prepared by Dr. Grausz's secretary who packed his belongings without his assistance — assertedly constituted a list of any household items not taken by his wife from their California home pursuant to their separation. No property settlement had occurred either at the time of Dr. Grausz's filing of his bankruptcy petition or the evidentiary hearing in this case. In any event, Dr. Grausz maintained that the household items not taken by his wife were shipped to a storage unit in Maryland to await his retrieval. The amended Schedule B did not make any reference to substantial community property, even though Dr. Grausz was still married when he filed his petition, and his matrimonial domicile was California, a community property state.[2]

---

[2]The amended schedule valued Dr. Grausz's household goods and furnishings at $150,000, an amount that Dr. Grausz's secretary estimated as

In October 1999, the unsecured creditors' committee, chaired by Sampson, arranged for an inventory of Dr. Grausz's storage unit. The inventory revealed that valuable items on the packing list were missing. In January 2000, the creditors' committee objected to Dr. Grausz's disclosures, in part because of inaccuracies in the listing of household goods and furnishings. On March 6, 2000, Sampson commenced this adversary proceeding against Dr. Grausz by filing a complaint to have Sampson's claim declared nondischargeable and to deny Dr. Grausz's discharge. Sampson alleged that Dr. Grausz breached the warranty in the settlement agreement by filing an amended Schedule B (incorporating the packing list) that contained an incorrect and incomplete list of Dr. Grausz's personal property. Sampson claimed, *inter alia*, that Dr. Grausz had failed to account for a significant number of valuable articles, including antiques and works of art.

In March 2001, the bankruptcy court heard Sampson's case against Dr. Grausz to determine dischargeability. The bankruptcy court found (1) that Dr. Grausz breached the warranty in the settlement agreement by his failure to list substantial community property interests on his amended Schedule B, (2) that Dr. Grausz, by resorting to vague and indefinite statements, failed to satisfactorily explain the loss of certain of his assets, including several valuable paintings, and (3) that Dr. Grausz failed to preserve adequate records from which his financial condition or business transactions might be ascertained. Based on these findings, the bankruptcy court awarded damages to Sampson for Dr. Grausz's breach of the settlement agreement and entered an order denying Dr. Grausz a discharge based on his failure to satisfactorily explain his loss of assets and his failure to preserve adequate records,

---

part of the packing process, *i.e.*, she "didn't even think about insurance when this was happening and at the last minute, right before the trucks were leaving to go wherever they were going, the supervisor that was handling this said you have to put something in." In contrast, as part of the divorce proceedings, Dr. Grausz stated that "[i]n my financial statements over the years, I have valued our entire personal property at $750,000, and it is clear that she [his wife] has taken more than one-half of the more valuable possessions, including a single diamond ring worth more than $100,000 and all of the silver."

pursuant to 11 U.S.C.A. §§ 727(a)(3) & (5) (West 1993). The district court affirmed.

## II.

Dr. Grausz raises a number of arguments on appeal. Only one requires discussion.

Dr. Grausz contends that the lower courts committed plain error in applying the discharge provision for Chapter 7 proceedings, 11 U.S.C.A § 727(a), rather than the discharge provision for Chapter 11 proceedings, 11 U.S.C.A. § 1141(d)(3) (West 1993). Clearly, 1141(d)(3) does apply here; that statute provides:

> The confirmation of a plan does not discharge a debtor if—
>
>> (A)   the plan provides for the liquidation of all or substantially all of the property of the estate;
>>
>> (B)   the debtor does not engage in business after consummation of the plan; and
>>
>> (C)   the debtor would be denied a discharge under section 727(a) of this title if the case were a case under Chapter 7 of this title.

In this case, the lower courts found that Dr. Grausz should be denied a discharge under § 727(a), thereby satisfying the requirements of § 1141(d)(3)(*C*), and Dr. Grausz concedes that the confirmed plan satisfies § 1141(d)(3)(*A*). However, Dr. Grausz asserts that he is entitled to discharge because "the bankruptcy court did not, and could not on the basis of the record, find that Dr. Grausz was not engaging in business after consummation of the plan," as required by § 1141(d)(3)(*B*).

Although the lower courts did err in not completing the full § 1141(d)(3) analysis, this error does not require reversal. Dr. Grausz's contention to the contrary rests on his argument that "engag-[ing] in business after consummation of the plan" means *any* "profit-

making pursuit[ ]." It is undisputed that after consummation of the plan, Dr. Grausz worked as a consultant for a business *unrelated* to the entities at issue in the bankruptcy. Indeed, the Joint Plan of Liquidation clearly did not permit the continuation of any of Dr. Grausz's pre-petition businesses, instead it provided for liquidation of those businesses. It seems clear to us that § 1143(a)(3)(B) does not refer to basic employment by an individual debtor but to the *continuation* of *a pre-petition* business, and, therefore, Dr. Grausz's argument fails. *Cf. In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 804 & n.15 (5th Cir. 1997) (finding subsection (B) satisfied where debtor would continue operating pre-petition hotel business for two years following plan confirmation, and contrasting *In re Wood Family Interests, Ltd.*, 135 B.R. 407 (Bankr. D. Colo. 1989) (holding that partnership debtor was not entitled to a discharge where its plan provided for liquidation and discontinuation of its business upon confirmation)).

After careful review of the record, briefs, and applicable law and consideration of the oral arguments of both parties, we hold that the lower courts did not err in reaching their other conclusions. Accordingly, we affirm largely on the basis of the opinions of the bankruptcy court and the district court. *See In re Henry Grausz, M.D.*, Civ. No. PJM 01-1173 (D. Md. Apr. 4, 2002); *In re Henry Grausz, M.D.*, Adversary No. 00-1099-PM (Bankr. D. Md. Mar. 13, 2001).[3]

### III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

---

[3]Section 727 of the Bankruptcy Code provides alternative, disjunctive bases for denial of discharge. *See* 11 U.S.C.A. § 727(a). We affirm the lower courts' denial of discharge on the basis of the failure to satisfactorily explain the loss of assets under § 727(a)(5) but not on the alternative basis of failure to keep and preserve adequate records under § 727(a)(3).